UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECA BRINKLY WARD,<br><br>                         Plaintiff,<br><br>v.<br><br>C & J LEGACY RESIDENTIAL, LLC;<br>ADAM PERON; and PAD PROPERTIES<br>GROUP, L.P., d/b/a WEST STAR<br>PROPERTIES,<br><br>                         Defendants. | Case No.:  26-CV-675 TWR (DDL)<br><br>**ORDER (1) SCREENING COMPLAINT PURSUANT TO 28 U.S.C. § 1915(e)(2)(B), AND (2) REQUIRING PLAINTIFF TO FILE A RESPONSE TO THIS ORDER** |

On February 3, 2026, pro se Plaintiff Rebeca Brinkly Ward filed a Complaint against C & J Legacy Residential, LLC, Adain Peron, and PAD Properties Group, L.P. (d/b/a West Star Properties) alleging several claims relating to her tenancy (ECF No. 1) and a Motion to Proceed *In Forma Pauperis* ("IFP").  (ECF No. 2.)  On March 3, 2026, the Court granted Plaintiff's request to proceed IFP.  (*See* ECF No. 7.)  The Court must screen all IFP complaints before service on defendants to ensure that they are not frivolous or malicious, that they state a claim on which relief may be granted, and that they do not seek monetary relief against an immune defendant.  28 U.S.C. § 1915(e)(2)(B).

/ / /

/ / /

1

**SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)**

## I.    Legal Standard

The Court must screen all IFP complaints before service on defendants to ensure that they are not frivolous or malicious, that they state a claim on which relief may be granted, and that they do not seek monetary relief against an immune defendant.  28 U.S.C. § 1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (holding that "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners").  "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).  To survive screening, all complaints must include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II.    Background

Plaintiff, a Black woman with a disability, has resided at 440 Chambers Street, Unit 9, El Cajon, California (the "rental unit") since December 2019.  (*See* ECF No. 1 ("Compl.") at 2.)  Plaintiff alleges her tenancy is managed by General Manager Adain Perone of West Star Properties.  (*Id.*)  Plaintiff alleges she experienced discrimination, harassment, and retaliation by Perone throughout her tenancy, including:

- Wrongfully denying the addition of Plaintiff's brother to her lease while he temporarily resided with Plaintiff—thus preventing Plaintiff from utilizing a housing voucher her brother received from a veteran's assistance program and depriving her of "critical financial assistance"—

26-CV-675 TWR (DDL)

despite previously adding non-Black co-tenants to Plaintiff's lease upon request without issue (*id.* at 2–3);

- Offering Plaintiff a "filthy unsuitable upstairs unit" when she requested transfer to a larger, two-bedroom unit to accommodate her family, despite offering a "suitable, code-compliant two-bedroom unit" in the same complex to a non-Black tenant to accommodate his family (*id.* at 3);

- Never offering Plaintiff a downstairs unit at anytime during her tenancy, despite her disability (*id.*);

- Harassing Plaintiff and her family over "mundane activities" including chopping and stacking wood, despite permitting such activities for other tenants (*id.*);

- Creating inaccurate payment histories on Plaintiff's ledger regarding her tender of rent (*id.* at 3–4);

- Refusing to accept certain forms of rent payment from Plaintiff, despite accepting such forms of payment from non-Black tenants without issue (*id.* at 5–6);

- Wrongfully initiating unlawful detainer actions against Plaintiff while refusing to accept her rent payments (*id.* at 5–8);

- Improperly serving notice of unlawful detainer and/or eviction on Plaintiff (*id.* at 8–9);

- Wrongfully designating the rental unit as "vacant" while Plaintiff was actively residing there (*id.* 9–10);

- Interfering with the maintenance team's efforts to make repairs requested by Plaintiff and deliberately delaying repairs, rendering the rental unit uninhabitable (*id.* 9–10);

- Refusing to address ongoing noise and nuisance issues caused by upstairs neighbors, despite Plaintiff's complaints (*id.* at 10);

26-CV-675 TWR (DDL)

- Granting permission to other tenants to use Plaintiff's assigned parking spot without her consent, despite knowing Plaintiff was pregnant, disabled, and "needing her parking spot at all times due to limited mobility" (*id.* at 10–11);

- Refusing to address Plaintiff's safety concerns regarding the lighting at the front entrance of the rental unit (*id.* at 11–12);

- Wrongfully denying Plaintiff service animal accommodations, despite her disability (*id.* at 12);

- Failing to exercise reasonable care in maintaining the rental property and deliberately ignoring Plaintiff's repair requests, including "replacing window blinds, six-nonfunctional electrical outlets, light entrance, sliding patio door, and caulking in the bathtub and toilet to prevent water leak/intrusion" (*id.* at 12–13); and

- Wrongfully continuing to bill Plaintiff as if two people were occupying the rental unit after Plaintiff's co-tenant permanently vacated and Plaintiff notified Perone of the change in occupancy (*id.* at 14).

Plaintiff further claims that on July 31, 2024, Defendants filed an unlawful detainer action (Case No. 24UD003733C) against her claiming non-payment of rent, (*id.* at 8), but then voluntarily dismissed the action on December 5, 2024 (*see id.* at 14). Then, on June 12, 2025, Defendants filed a new unlawful detainer action (Case No. 25UD030836C) against her. (*See id.*) Although unclear, it seems Plaintiff still has possession of the rental unit. (*See, e.g., id.* at 14 ("In settlement discussions related to the unlawful detainer actions, Defendant Adain Perone's primary and consistent demand has been for Plaintiff to vacate the apartment. Defendant Perone has framed financial settlement offers around this condition of vacancy.").) The status of the second unlawful detainer action is also unclear. (*See generally id.*)

/ / /

/ / /

26-CV-675 TWR (DDL)

On February 3, 2026, Plaintiff filed a complaint against C & J Legacy Residential, LLC, Adain Peron, and PAD Properties Group, L.P (d/b/a West Star Properties) (the "Defendants") alleging several causes of action.[1]   (*See generally id.*)

## III.   Discussion

### A.   *Violations of the Fair Housing Act*

The Fair Housing Act ("FHA") makes it "unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental, or in the provision of services or facilities in connection therewith," because of race, color, religion, sex, familial status, national origin, or handicap.  42 U.S.C. § 3604(b), (f)(2).  Discrimination "in the provision of services or facilities" includes failing or delaying maintenance or repairs of a rental dwelling, or limiting the use or privileges, services, or facilities associated with a rental dwelling on account of race, color, religion sex, handicap, familial status, or national origin. 24 C.F.R. § 100.65(a)(1), (4); *see The Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 711 (9th Cir. 2009).  "[T]he FHA not only requires that individuals be given the opportunity to secure housing in a non-discriminatory manner, but also

---

[1]   The caption of Plaintiff's Complaint lists thirteen causes of action: Violation of the Fair Housing Act; Violation of the Americans with Disabilities Act; Retaliatory Eviction; Acting in Bad Faith; Violation of Right to Quiet Enjoyment; Negligence; Retaliation, Harassment, and Intimidation; Invasion of Privacy; Emotional Distress and Mental Anguish; Unauthorized Fees or Charges; Failure to Address Noise or Nuisance; Breach of Warranty of Habitability; Misleading and Unfair Business Practices; Breach of Fiduciary Duty; and Falsification of Business Records.  (*See generally* Compl.)  The body of her Complaint, however, discusses only the following causes of action: Violation of the Fair Housing Act; Violation of the Americans with Disabilities Act; Fraud/Intentional Misrepresentation; Unfair Competition; Wrongful Eviction; Retaliatory Eviction; Breach of Warranty of Habitability; and Intentional Infliction of Emotional Distress.  (*See generally id.*)

The Court cannot accept legal conclusions set forth in the Complaint if Plaintiff has not supported her contentions with facts.  *See Hoagland v. Astrue*, No. 1:12-cv-00973-SMS, 2012 WL 2521753, at *3 (E.D. Cal. June 28, 2012) (citing *Iqbal*, 556 U.S. at 678). The Court therefore **DISMISSES WITHOUT PREJUDICE** the following causes of action for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B): Acting in Bad Faith; Negligence; Retaliation, Harassment, and Intimidation; Invasion of Privacy (Intrusion into Seclusion); Emotional Distress and Mental Anguish; Unauthorized Fees or Charges; Failure to Address Noise or Nuisance; Misleading and Deceptive Unfair Business Practices; Breach of Fiduciary Duty; and Falsification of Business Records.

26-CV-675 TWR (DDL)

'guarantees their right to equal treatment once they have become residents of that housing.'" *Jimenez v. David Y Tsai*, No. 5:16-CV-04434-EJD, 2017 WL 2423186, at *5 (N.D. Cal. June 5, 2017) (quoting *Hous. Rts. Ctr. v. Sterling*, 404 F. Supp. 2d 1179, 1192 (C.D. Cal. 2004)); *see Patton v. Hanassab*, No. 14-CV-1489-AJB (WVG), 2016 WL 4507022, at *6 (S.D. Cal. Aug. 29, 2016).

There are three theories under which a plaintiff can establish a FHA discrimination claim: (1) disparate treatment, (2) disparate impact, and (3) failure to make reasonable accommodations. *Gamble v. City of Escondido*, 104 F.3d 300, 305–07 (9th Cir. 1997); *Smith v. Cityfront Terrace Homeowners Ass'n*, No. 15-CV-00427-BAS(WVG), 2016 WL 1450709, at *2 (S.D. Cal. Apr. 13, 2016).

### 1. Disparate Treatment

The elements of a disparate treatment claim are: "(1) [the] plaintiff's rights are protected under the FHA; and (2) as a result of defendant's discriminatory conduct, [the] plaintiff has suffered a distinct and palpable injury." *Harris v. Itzhaki,* 183 F.3d 1043, 1051 (9th. Cir.1999); *see Gamble*, 104 F.3d at 305.   As for the second element, "[p]roof of discriminatory motive is crucial." *Gamble*, 104 F.3d at 305 (internal quotations and citations omitted).

Plaintiff contends she is a member of the following protected classes: (a) race (she is Black), (b) familial status (she was pregnant at the time of the alleged violations), and (c) disability[2] (she has a severe breathing disability).  (*See* Compl. at 15.)  The Court addresses Plaintiff's allegations with respect to each class in turn.

### a. Race

Plaintiff satisfies the first element because race unquestionably qualifies as a protected class under the FHA.  *See* 42 U.S.C. § 3604(b).  Regarding the second element, Plaintiff contends "Defendants' stated reason for eviction (non-payment) was a pretext.

---

[2]    The Court construes Plaintiff's disability (*i.e.*, "handicap") discrimination allegation as a claim regarding Defendants' failure to make reasonable accommodations.  (*See infra* Section III.A.1.c.)

Their true motive was discrimination and retaliation based on Plaintiff's protected characteristics." (Compl. at 15.)  To begin, eviction constitutes an adverse action under the FHA.  *Patton*, 2016 WL 4507022 at *6 (citing *Harris v. Itzhaki*, 183 F.3d 1043 (9th Cir. 1999); *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 364 (8th Cir. 2003)).  Attempted eviction is also recognized as an adverse action.  *See, e.g.*, *Pardo-Pena v. Kaas Props. LLC*, No. 2:23-CV-06197-SPG (MRWX), 2024 WL 3298284, at *7–9 (C.D. Cal. Feb. 9, 2024); *Tabi v. Lazovsky*, No. CV 17-7189 DMG(JC), 2018 WL 7457933 (C.D. Cal. Nov. 7, 2018), *report and recommendation adopted*, No. CV 17-7189 DMG(JC), 2019 WL 934978, at *7–8 (C.D. Cal. Feb. 26, 2019); *Na"im v. Sophie's Arms Fine Residences*, No. 13CV2515 JAH BLM, 2015 WL 401257, at *3 (S.D. Cal. Jan. 8, 2015); *Hous. Rts. Ctr. v. Sterling*, 404 F. Supp. 2d 1179, 1192–93 (C.D. Cal. 2004).  Accordingly, Plaintiff satisfies the "district and palpable injury" requirement of the second element.  *See id.*  The remaining question is thus whether Plaintiff sufficiently alleges Defendants' "discriminatory conduct" (*i.e.*, the protected classes were in part a motivating factor for the adverse treatment).  *See Jimenez*, 2017 WL 2423186, at *5.

With respect to race, Plaintiff alleges:

> Defendants engaged in a pattern of conduct demonstrating racial animus and disparate treatment, including but not limited to: (a) sabotaging the housing voucher for Plaintiff's Black, veteran brother while cooperating with non-Black tenants; . . . [and] (c) refusing Plaintiff a suitable ground-floor unit while readily offering one to a non-Black family[.]

(Compl. at 15.)  The foregoing allegations constitute sufficient facts to suggest Plaintiff may have been subjected to less favorable "terms, conditions, or privileges" with respect to the rental unit or the eviction proceedings brought against her than other tenants based on her race; thus, she satisfies the "discriminatory conduct" requirement of the second element.  *See Patton*, 2016 WL 4507022, at *6; *Hous. Rts. Ctr. v. Sterling*, 404 F. Supp. 2d 1179, 1192 (C.D. Cal. 2004).  Accordingly, the Court **FINDS** Plaintiff's claim of disparate treatment with respect to her race passes screening under 28 U.S.C. § 1915(e)(2)(B).

26-CV-675 TWR (DDL)

### b.    Familial Status

Like race, familial status unquestionably qualifies as a protected class under the FHA.[3]  *See* 42 U.S.C. § 3604(b).  Thus, Plaintiff satisfies the first element.  Regarding the second, Plaintiff contends "Defendants targeted [her] for adverse actions after learning of her pregnancy and marriage, including initiating eviction proceedings, which constitutes discrimination based on familial status." (Compl. at 15.)  These conclusory allegations are insufficient to show Plaintiff's familial status was in part a motivating factor for her adverse treatment.  *See Twombly*, 550 U.S. at 555 (holding "courts are not bound to accept as true a legal conclusion couched as a factual allegation").  Thus, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's disparate treatment claim with respect to familial status.

### 2.    *Disparate Impact*

In contrast to disparate treatment, "[t]o establish a prima facie disparate impact case, a plaintiff must establish at least that the defendant's actions had a discriminatory effect." *Gamble*, 104 F.3d at 306 (internal quotations and citations omitted).  The elements of a disparate impact claim are:

> (1) the existence of a policy, not a one-time decision, that is outwardly neutral; (2) a significant, adverse, and disproportionate effect on a protected class, of which the plaintiff is a member; and (3) robust causality that shows, beyond mere evidence of a statistical disparity, that the challenged policy, and not some other factor or policy, caused the disproportionate effect.

*Sw. Fair Hous. Council, Inc.*, 17 F.4th at 960; *see Gamble*, 104 F.3d at 305.

Plaintiff does not allege the existence of any policy whatsoever; rather, she alleges specific instances of discrimination, harassment, and retaliation by Defendants.  (*See generally* Compl.)  Accordingly, the Court **DISMISSES WITHOUT PREJUDICE**

---

[3]    According to the U.S. Department of Urban Development, the agency tasked with implementing the FHA, pregnant women qualify as members of the "familial status" protected class.  *See Fair Housing*, U.S. DEPT. OF URB. DEV., available at https://www.hud.gov/sites/documents/fheo_booklet_eng.pdf.

26-CV-675 TWR (DDL)

Plaintiff's FHA discrimination claim to the extent it alleges disparate impact.  *See Jimenez*, 2017 WL 2423186, at *7 (dismissing a disparate impact claim under the FHA when plaintiffs "did not identify a facially discriminatory policy").

### 3.    Failure to Make Reasonable Accommodations

Regarding disability, Plaintiff alleges Defendants "failed to make reasonable accommodations," such as "refusing to timely repair electrical outlets required for her medical equipment, denying a request for a security accommodation (doorbell camera), and taking away her assigned parking space." (Compl. at 15.)  To make out a prima facie case for refusal to make a reasonable accommodation under the FHA, Plaintiff must plead (1) she suffers from a "handicap" as defined in 42 U.S.C. § 3602(h), (2) Defendants knew of her handicap or should have reasonably been expected to know of it, (3) the accommodation "may be necessary" to afford Plaintiff an equal opportunity to use and enjoy the dwelling, and (4) Defendants refused to make the accommodation.  *DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006), *cert. denied*, 549 U.S. 1216 (2007); *United States v. Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997).

The FHA defines handicap as "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h).  Plaintiff contends she has "a severe breathing disability" and as well as limited mobility. (*See generally* Compl.)  In support of this, Plaintiff attaches to her Complaint an Application for Disabled Person Placard of Plates with the Department of Motor Vehicles. (*See* ECF No. 1-2 at 107.)  In the Application, a nurse practitioner indicates Plaintiff has "[a] diagnosed disease or disorder which substantially impairs or interferes with mobility" and "[a] significant limitation in the use of lower extremities" due to "gait instability secondary to chronic knee pain and bilateral osteoarthritis of knees." (*See id.*)  The Court finds the nurse practitioner's remarks on behalf of Plaintiff may be sufficient to support

26-CV-675 TWR (DDL)

that Plaintiff suffers from a handicap as defined in 42 U.S.C. § 3602(h), at least with respect to her mobility.

Plaintiff fails, however, to establish Defendants knew or should have reasonably been expected to know of her handicap.  In support of her assertion that Defendants knew of her disability, Plaintiff attaches a copy of an email exchange between herself and Perone. (*See* ECF No. 1-2 at 184–98.)  The only reference to the parking space in this exchange is Plaintiff's mentioning of "that guy you [Perone] gave my parking spot away to that lives on top of my unit." (*Id.* at 197.)  This is insufficient to establish that Defendants knew or should have reasonably been expected to know she suffers from limited mobility.  Thus, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's claim to the extent it alleges Defendants failed to make reasonable accommodations regarding her disability (*i.e.*, "handicap").  *See Iqbal*, 556 U.S. at 678 (explaining that, absent factual support, "an unadorned, the defendant-unlawfully-harmed-me accusation" does not constitute a plausible claim for relief).

### 4. Interference with FHA Rights[4]

Plaintiff contends "Defendants' campaign of fabricating ledger entries, refusing tendered rent, and filing eviction actions was initiated and escalated in direct response to Plaintiff's exercise of her FHA rights (requesting accommodations, opposing discrimination), in violation of 42 U.S.C. § 3617." (Compl. at 15.)  Section 3617 provides that it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."  42 U.S.C. § 3617.  The Ninth Circuit interprets Section 3617 broadly, "reach[ing] all practices which

---

[4]  Plaintiff titles her claim as "retaliation," but cites 42 U.S.C. § 3617 as the relevant law. (*See* Compl. at 15.)  This statute concerns interference with a plaintiff's FHA rights.  *See* 42 U.S.C. § 3617. The Court addresses Plaintiff's specific retaliation allegations later in this Order. (*See infra* Section III.F.)

26-CV-675 TWR (DDL)

have the effect of interfering with the exercise of rights under the federal fair housing laws." *See Ohio House, LLC v. City of Costa Mesa*, 135 F.4th 645, 670 (9th Cir. 2025) (internal quotations and citations omitted).  To bring a claim for interference with FHA rights, a plaintiff must establish that "(1) [she] was engaged in protected activity; (2) [she] suffered an adverse action; and (3) there was a causal link between the two." *Id.* (internal quotations and citations omitted).

### a.   "Requesting Accommodations"

It is unclear whether Plaintiff's "requesting accommodations" from Defendants constitutes a protected activity for purposes of Section 3617 because Plaintiff has not established that Defendants knew or should have reasonably been expected to know of her alleged disability.  (*See supra* Section III.A.3.)  Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's claim for interference with FHA rights as it relates to her disability (*i.e.*, "handicap").

### b.   "Opposing Discrimination"

Based on the facts alleged, the Court cannot decipher what Plaintiff intends by "opposing discrimination." (*See generally* Compl.)  While Plaintiff alleges several facts suggesting she was subject to discrimination by Defendants, she does not clearly allege the ways in which she attempted to oppose Defendants' discriminatory practices. (*See generally id.*)  Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's claim for interference with FHA rights as it relates to race and/or familial status.

### B.   *Violation of the Americans with Disabilities Act*

To state a claim for violation of the Americans with Disabilities Act ("ADA"), a plaintiff must allege: "(1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (citations omitted).  Although residential apartment complexes do not generally fall within the scope of a "public accommodation" as defined by the ADA, *see* 42 U.S.C. § 12181(7)(A)–(L),

11

26-CV-675 TWR (DDL)

areas within a residential complex can qualify as places of public accommodation if they are available for use by the public. *See Green v. Mercy Hous., Inc.,* No. C 18-04888 WHA, 2018 WL 6704185, at *2 (N.D. Cal. Dec. 20, 2018) (citing *Trostenetsky v. Keys Condo. Owners Ass'n*, No. 17-cv-04167, 2018 WL 2234599, at *2 (N.D. Cal. May 16, 2018)).

Plaintiff alleges that the rental office, common area, and parking facilities of the residential complex. where her rental unit resides, are places of public accommodation under the ADA. (Compl. at 16.)  However, Plaintiff fails to demonstrate that these areas are available for use by the public. (*See generally id.*)  The Court cannot conclude—based on Plaintiff's conclusory assertions—that these areas fall within the scope of a "public accommodation" such that they are subject to the ADA. *See Twombly*, 550 U.S. at 555 (holding "courts are not bound to accept as true a legal conclusion couched as a factual allegation").  Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's claim for ADA violations.

### C.   Fraud/Intentional Misrepresentation

Under California law, "[t]he elements of intentional misrepresentation, or actual fraud, are: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage." *Anderson v. Deloitte & Touche*, 56 Cal. App. 4th 1468, 1474 (1997) (internal quotations and citations omitted); *see* Cal. Civ. Code § 1710. Additionally, in the Ninth Circuit, claims for intentional misrepresentation must meet Federal Rule of Civil Procedure Rule 9(b)'s particularity requirements. *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985) ("[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule.")).  Specifically, Rule 9(b) requires "[a]verments of fraud [to] be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v.*

*Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).  The purpose of this heightened standard is "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

Plaintiff alleges Defendants knowingly made false statements of material fact by creating and maintaining fraudulent rental ledgers that misrepresented "the April 2024 rent payment as four separate money orders totaling $1,600.00, when Plaintiff had tendered a single negotiable instrument for a different amount" and the date that payment was received.  (Compl. at 17.)  Plaintiff contends Defendants intended "to deceive Plaintiff . . . by creating a fabricated paper trail to falsely show a payment irregularity and justify unlawful detainer actions."  (*Id.*)  Plaintiff further alleges Defendants intended to induce Plaintiff's reliance "by confusing her account status."  (*Id.*)  Moreover, Plaintiff asserts she suffered actual damages, such as being "forced to expend resources to defend against eviction lawsuits prejudicated on this fraud."  (*Id.*)

Considering the foregoing, the Court **FINDS** Plaintiff's fraud/intentional misrepresentation claim passes screening under 28 U.S.C. § 1915(e)(2)(B).

### D.    *Unfair Competition*

To state an Unfair Competition Law ("UCL") claim in California, "a plaintiff must show either an (1) 'unlawful, unfair, or fraudulent business act or practice,' or (2) 'unfair, deceptive, untrue or misleading advertising.'"  *Lippett v. Raymond James Fin. Servs.*, 340 F.3d 1033, 1043 (9th Cir. 2003) (citing Cal. Bus. & Prof. Code § 17200).  California's UCL "'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder."  *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992).  Accordingly, "if a 'business practice' violates any law—literally—it also violates § 17200 and may be redressed under that section."  *Newton v. Am. Debt Servs., Inc.*, 75 F. Supp. 3d 1048, 1056 (N.D. Cal. 2014) (internal citations and quotations omitted).  "A plaintiff who has spent or lost money due

to an unfair business practice may bring an action under the UCL to enjoin the practice, or to secure restitution of benefits which have been acquired as the result of the unfair competition." *Martinez v. Optimus Props., LLC*, No. 2:16-CV-08598-SVW-MRW, 2017 WL 1040743, at *9 (C.D. Cal. Mar. 14, 2017) (citing Cal. Bus. & Prof. Code §§ 17203–04).

Because Plaintiff seeks injunctive and declaratory relief, (*see* Compl. at 34), and considering she pleaded sufficient facts to allege the predicate violation, (*see supra* Section III.C.), the Court **FINDS** Plaintiff's UCL claim passes screening under 28 U.S.C. § 1915(e)(2)(B).

### E.   Wrongful Eviction

To state a claim for wrongful eviction under California law, a plaintiff must have suffered "damages for injuries to his person and goods caused by the forcible entry of one who is, or claims to be, the lawful owner or possessor." *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 90 Cal. Rptr. 3d 453 (2009) (internal quotations and citations omitted). Problematically, Plaintiff does not allege actual dispossession of the rental unit. (*See generally* Compl.) Instead, Plaintiff merely alleges that Defendants initiated and pursued unlawful detainer actions against her, causing her to suffer "the *imminent* loss of her home." (*See id.* at 19 (emphasis added).) Because Plaintiff's alleged injury is only speculative, the Court **DISMISSES WITHOUT PREJUDICE** her claim for wrongful eviction. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013) (explaining a "theory of future injury is too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending'").

### F.   Retaliatory Eviction

Plaintiff brings a claim for retaliatory eviction pursuant to California Civil Code § 1942.5, (*see* Compl. at 19), which provides specific methods (*i.e.*, subsections) for satisfying the statute. *See* Cal. Civ. Code § 1942.5(a)(1)–(5). As a threshold matter, Plaintiff does not identify which subsection applies to her claim. (*See* Compl. 19–20.) Because it is improper to assume Plaintiff can prove facts she has not alleged, *see*

*Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983), the Court declines to assume which subsection Plaintiff intends to apply for her Section 1942.5 claim.  Moreover, Plaintiff alleges Defendants retaliated by threatening and initiating unlawful detainer proceedings against her, resulting in "the *imminent* loss of her home."  (Compl. at 20 (emphasis added).)  As previously explained, Plaintiff's allegation of a speculative injury is insufficient to state a claim.  (*See supra* Section III.E.)  Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** her claim for retaliatory eviction.

### G.  Breach of Warranty of Habitability[5]

California law provides that a dwelling shall be deemed untenable if it substantially lacks certain affirmative standard characteristics, including: "plumbing or gas facilities that conformed to applicable law in effect at the time of installation, maintained in good working order[,]" "electrical lighting, with wiring and electrical equipment that conformed with applicable law at the time of  installation, maintained in good working order[,]" and "floors, stairways, and railings maintained in good repair."  *See* Cal. Civ. Code § 1941.1(a).

Plaintiff alleges Defendants breached their duty under Section 1941 because the rental unit contains certain defects, including eleven non-functional electrical outlets, inoperable and broken lighting at the unit entrance, and defective plumbing.  (Compl. at 20–21.)  Plaintiff further alleges she gave Defendants written and oral repair requests and suffered damages, including "being forced to reside elsewhere to access basic utilities" (*i.e.*, constructive eviction).  (*Id.* at 21.)  The Court **FINDS** Plaintiff breach of warranty of habitability claim passes screening under 28 U.S.C. § 1915(e)(2)(B).

/ / /

/ / /

---

[5]  The Court notes that Plaintiff brings her Breach of Warranty of Habitability cause of action against "Landlord Defendants," without defining who comprise the "Landlord Defendants."  (*See* Compl. at 20–21.)  All other causes of action are brought against "All Defendants."  (*See generally id.*)  The Court understands the "Landlord Defendants" to mean the same as "All Defendants."

### H.     Intentional Infliction of Emotional Distress

The elements for a claim of intentional infliction of emotional distress ("IIED") under California law are (1) extreme and outrageous conduct by the defendant, (2) extreme or severe emotional distress to the plaintiff, and (3) actual and proximate causation between the two. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993). To be outrageous, the defendant's conduct must be so extreme as to exceed all bounds of that usually tolerated in a civilized community. *Id.* Moreover, the defendant must have engaged in conduct intended to inflict injury or with the realization that injury will result. *Id.*

Plaintiff alleges Defendants engaged in extreme and outrageous conduct including "[m]aking direct, threatening references to her pregnancy and family" and "[s]abotaging her family's housing stability (e.g., blocking her brother's veteran voucher)." (Compl. at 21–22.) Plaintiff further alleges she suffered severe emotional distress as a result of Defendants' conduct, such as anxiety, depression, sleep deprivation, and stress, resulting in exacerbation of her disability-related conditions. (*Id.* at 22.) The Court **FINDS** Plaintiff's IIED claim passes screening under 28 U.S.C. § 1915(e)(2)(B).

### CONCLUSION

Because the Court has dismissed some of Plaintiff's claims without prejudice, Plaintiff may elect to amend her Complaint. Alternatively, Plaintiff may elect to proceed with the claims that survived screening under 28 U.S.C. § 1915(e)(2)(B). Accordingly, Plaintiff **SHALL FILE** a response within forty-five (45) days of the Court's Order electing either to: (1) proceed only with the following claims against Defendants: disparate treatment with respect to race in violation of the Fair Housing Act, fraud/intentional misrepresentation, unfair competition, breach of warranty of habitability, and intentional

/ / /

/ / /

/ / /

/ / /

16

infliction of emotional distress,[6] **OR** (2) file an amended complaint.  If Plaintiff chooses to file an amended complaint, no other response to this Order is necessary.

**IT IS SO ORDERED.**

Dated:  May 15, 2026

Honorable Todd W. Robinson
United States District Judge

---

[6]    If Plaintiff elects to proceed only with these claims, her remaining claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

26-CV-675 TWR (DDL)